**Harlo JANZEN, Plaintiff in Error,**

**v.**

**J. F. CLAYBROOK, Ola Cowan, Joe Claybrook, Osa Nolder and Becky Davenport, Defendants in Error.**

**No. 40872.**

Supreme Court of Oklahoma.

Oct. 18, 1966.

Miles & Miles, Beaver, Robert H. Loofbourrow, Boise City, for plaintiff in error.

Ogden, Ogden & Williams, Guymon, for defendants in error.

PER CURIAM:

This is an appeal from a judgment of the District Court of Beaver County, Oklahoma, decreeing that the petition for the probate of an alleged last will and testament was not supported by the evidence, and rendering judgment for the contestants.

The record discloses that Ed Claybrook died in Beaver County, Oklahoma, on December 20, 1962; that he was a resident of said county and was seized and possessed of real and personal estate located therein.

On December 31, 1962, John L. Claybrook, a brother of the deceased, filed his petition for the appointment of himself as administrator of the estate of the deceased in cause No. 2803, in the County Court of Beaver County, Oklahoma, and gave notice of hearing. In the petition it was alleged that Ed Claybrook died intestate, that due search had been made to ascertain if the deceased had left a last will and testament, but that none had been found.

On January 11, 1963, Harlo Janzen filed in said cause a protest of the issuance of letters, and on the same date filed a petition for the probate of a lost will, in a new case, No. 2805. Notice was given as provided by law. It was stated in the petition that on or

about the 15th day of February, 1958, the decedent, Ed Claybrook, made and duly signed his last will and acknowledged the same as such in the presence of certain named witnesses who duly attested the same and subscribed their names as witnesses thereto in the presence of the testator, and in the presence of each other at the testator's request; that said will had a legal existence and was unrevoked at the time of the death of said testator; that the same could not be found, although search had been made for it, and that at the time of such execution the testator was of legal age, of sound mind, and not acting under any undue influence, fraud, menace, duress or mistake. A carbon copy of the will was attached to the petition. It was further stated in the petition that Harlo Janzen was named as a devisee in decedent's last will and asked that he be appointed administrator with will annexed of the estate of said decedent, although the will named John Claybrook as executor.

J. F. Claybrook, Ola Cowan, Joe Claybrook, Osa Nolder and Becky Davenport, all brothers and sisters of the deceased, filed protest and objections to the petition for probate of the lost will. The two cases were consolidated for trial by agreement on February 8, 1963, on which date the County Judge sustained a demurrer to the evidence of the proponent of the lost will. Thereafter, Harlo Janzen, the proponent, appealed to the District Court of Beaver County, Oklahoma.

Upon a trial de novo of both cases consolidated for hearing on July 29, 1963, after all the evidence was presented by both sides, the District Court found that the proponent of the lost will had failed to sustain the allegations of his petition, that the contestants had sustained the allegations of their petition in contest of the alleged lost will and testament of Ed Claybrook, and that the decedent died intestate.

From a judgment in favor of the contestants, this appeal was taken.

The assignments of error present to this Court the propositions that the District Court erred in (a) holding that the petition for the probate of the alleged lost will was not supported by the evidence, and (b) in rendering judgment for the contestants.

Title 84 Okla.St.Ann. § 91 provides:

"A lost or destroyed will of real or personal property, or both, may be established in the cases provided by law."

Title 58 Okla.St.Ann. § 82, sets out the special requisites of proof of a lost will as follows:

"No will shall be proved as a lost or destroyed will, unless the same is proved to have been in existence at the time of the death of the testator or is shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses."

█ In the case at bar there is no contention that the will was fraudulently destroyed in the lifetime of the testator. Therefore, under the above quoted provisions of sec. 82 the burden is on the proponent to prove that the lost will was in existence at the time of the death of Ed Claybrook.

The defendants in error, contestants, pointed out that the proponent, plaintiff in error herein, did not prove the will was in existence at the time of the death of the testator and that the only statement on this point in the petition to probate the lost will was as follows:

"* * * that the said will had a legal existence and remained unrevoked at the time of the death of said testator; that the same cannot now be found, although thorough search has been made for the same; that a copy of the carbon copy of the original is hereto attached as 'Exhibit A'".

Testimony introduced on behalf of proponent, plaintiff in error, was substantially as follows:

Witness Merle Lansden testified that he was an attorney at law, practicing in Beaver since 1939, that he had known Ed Claybrook for a number of years and had been his

attorney. The witness testified that he prepared a will for the deceased on February 15, 1958, and that the decedent executed the will before him and two other witnesses, Christine Strong and Keith Drum on the same day; that the original and one copy was delivered to the decedent. The witness also identified "Exhibit A" as being a carbon copy of the original instrument executed, and testified further that he wrote the names of the three attesting witnesses upon the carbon copy given to the testator. He also testified that he made a search for the original will but never found it. He had, however, located the carbon copy of the will.

The witness Keith Drum testified that on February 15, 1958, he was with the firm of Lansden and Drum and had an independent recollection of Mr. Lansden having prepared a will for the decedent and that he, Drum, acted as a witness co-signing the will with other witnesses in Mr. Claybrook's presence. He also identified the copy as being a carbon of the original.

Harlo Janzen, the proponent, and his wife, testified in substance that they had known Ed Claybrook for 12 years, and that they had lived in their home about 200 feet from the residence of the decedent for the same period of time. That their home was on his land and when their house was destroyed by fire the decedent paid for the lumber for a new home. They further testified that the copy of the will marked "Exhibit A" was first seen by them on February 15, 1958, when it was handed to them by the decedent and at that time they read it; that they both saw the copy on one other occasion.

Robert Miles, attorney for proponent, testified that after the death of Ed Claybrook he made trips to three banks in Perryton, Texas, and the First National Bank at Beaver, Oklahoma, searching and looking for the will and that he also went through all the papers in the decedent's home as well as his own office, and did not find the original will.

Although other witnesses testified in behalf of proponent, no evidence was adduced showing the will was in existence at the time of the death of the decedent, Ed Claybrook.

Clyde Williams testified for the contestants and defendants in error, that he had known Mr. Claybrook for about 57 years and that they had visited each other in their homes, but that they were not particularly close friends; that he talked to the decedent a week or 10 days before he went to the hospital and that at the time Mr. Claybrook said he had had a will but destroyed it. That the decedent had the will, apparently in a safety deposit box in the bank but that he took the will, destroyed it and threw it in the waste basket in the bank. However, on cross examination, Williams testified that the decedent did not tell him when he took the will out of the bank at Perryton, nor the date he tore it up. He also said it could have been a will he had several years before, and he did not know which will it was.

George Reed testified he became acquainted with the deceased in 1918 and that while working at the hospital as a janitor he visited the decedent in the hospital in December, 1962, and during that period the decedent told Mr. Reed he didn't have any will.

At the conclusion of the trial de novo in the District Court of cases Nos. 2803 and 2805 consolidated for hearing, judgment was rendered in favor of the contestants.

Section 82 supra sets out two requisites which must be met in proving a lost will; (1) the lost will must be proved to have been in existence at the time of the death of the testator, (2) and its provisions must be clearly and distinctly proved by at least two credible witnesses.

In Day v. Williams, 184 Okl. 117, 85 P.2d 306, this court held that the existence of the will alleged to have been lost, must be clearly and convincingly proved to have been in existence. In that case a proceeding was brought to probate a copy of a lost will. Contestants contended that the provision of the statute with reference to proving a lost will had not been followed.

In affirming the lower court in sustaining a demurrer to proponent's evidence, we held that 58 O.S.A. § 82 is mandatory and may not be disregarded. In the body of the opinion it was pointed that the states of California, Washington, Colorado and Nevada have identical statutes and that each of those states has uniformly and consistently required strict compliance with the words of this statute. We also quoted with approval from In Re Calvin's Estate, 188 Wash. 283, 62 P.2d 461, where it was held:

"Statute with reference to proving lost or destroyed will is mandatory and may not be disregarded."

"To establish lost or destroyed will it must be proved that will was in existence at the time of testator's death, and its provisions must be clearly and distinctly proved."

In their brief, the proponents of the will cite the case of In re Moramarco's Estate, 86 Cal.App.2d 326, 194 P.2d 740, as being applicable. In that case there was testimony that decedent stated he had a will four days before he died. Based on this and other substantial evidence, the trial court found a presumption that the will was in existence at the time of the testator's death.

■ Plaintiff in error takes the position that inasmuch as he proved the will could not be found, that he had met the burden of proving the will was lost. He further takes the position that the burden was then on the defendants in error to prove that the will was revoked before the testator's death. Plaintiff in error's reasoning is incorrect because the burden is on plaintiff in error to prove, or establish by proof a presumption, that the decedent's will was in existence at the time of the decedent's death.

■ Plaintiff in error, in his brief, contends that the fact a copy of decedent's will was found in his home shortly after his death "should be considered as showing that the original will was still in legal existence at the time of the testator's death." The authorities or cases cited by him in his brief do not support this contention.

■ Under the provisions of 58 O.S.A. § 82 and·the authorities construing it, the burden was on the proponent, plaintiff in error herein, to prove the will was in existence at the time of the death of the decedent. Not having discharged such burden, the plaintiff in error cannot complain of the lower court's action in denying probate.

■ Proponent, Janzen, invites attention to the provisions of 84 O.S.1961, §§ 101 and 102, which provide in substance that a will may not be revoked other than by being "burnt, torn, canceled, obliterated or destroyed" with intent to revoke the same. In this connection we quote the testimony of Clyde Williams with reference to a conversation with decedent in December, 1962, as follows:

"Q. Let me re-phrase my question. On that occasion did Mr. Ed Claybrook say anything to you with reference to whether or not he had or did not have a will in existence?

"A. Well, he told me that he had had a will but he destroyed it, he tore it up.

"Q. Did he say where that was done?

"A. Well, I got he had it apparently in a safety deposit box in the bank and he took it out and destroyed it, what he told me, in the bank and threw it in the waste basket."

The foregoing testimony is evidence that deceased had *no* "will in existence" at the time of the conversation in December, 1962, regardless of the number of wills previously executed by him. This testimony would seem to satisfy any applicable requirements of Sec. 101, supra.

The judgment of the trial court is affirmed.

The Court acknowledges the services of Special Master Norma F. Wheaton, who with the aid and counsel of Special Masters Richard H. Wills, Jr., and Jay C. Baker, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appoint-

ed by the Court. The Chief Justice then assigned the case to JACKSON, V. C. J., for review and study, after which upon consideration by the Court, the foregoing opinion was adopted.