2000 OK CIV APP 147

**In the Matter of the ESTATE OF Ralph Shi GOODWIN, deceased.**

**Dior Marie Goodwin, Appellant,**

v.

**The Estate of Ralph Shi Goodwin, deceased, Appellee.**

**No. 93,704.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 26, 2000.

Certiorari Denied Dec. 12, 2000.

Gregg R. Renegar, Joan A. Renegar, Kornfield Franklin, Renegar & Randall, Oklahoma City, Oklahoma, for Appellant.

Bill J. English, English & Odom, Norman, Oklahoma for Appellee.

## OPINION

GOODMAN, C.J.

¶1 This is Dior Marie Goodwin's (Granddaughter) appeal from the trial court's September 20, 1999, order denying probate of a purported last will and testament sponsored by Granddaughter. The trial court held Ralph Shi Goodwin (Decedent) died intestate and that Granddaughter failed to prove the existence of a lost will. Granddaughter appeals. We affirm.

### Facts

¶2 Decedent died October 22, 1996, leaving an estate. His heirs at law are two adult sons, an adult daughter, and Granddaughter, the sole issue of another son, who predeceased Decedent. One of the surviving sons (Administrator) stated a search had been conducted for a last will. None being found, he asked the court to issue him letters of administration, which were granted without bond on December 23, 1996. Decedent's heirs were determined to be the surviving adult children and Granddaughter.

¶3 On July 28, 1997, Granddaughter filed a motion requesting the probate court to require Administrator to post a bond and requesting an accounting of the estate. A general inventory and appraisement was filed by Administrator November 17, 1997, valuing the estate at $414,561.

¶4 On June 22, 1999, Granddaughter produced what she alleged was Decedent's last will and testament, which she proffered for probate. The document was not an original document, but rather a photocopy of the executed original will.[1] The will, dated May 21, 1985, gave $10 each to Administrator and the adult daughter, and the rest of the estate to the surviving adult son. No provision in the will was made for Granddaughter's deceased father. We can only surmise Granddaughter sought to have the will declared valid in order to make a claim as a pretermitted heir, thereby increasing her share of the estate from one-fourth (as an heir at law in the intestate estate) to one-half (as a pretermitted heir under the will).[2]

---

1. The photocopy of the will was discovered in the files of the law firm representing the administrator after a vigorous and hotly contested discovery process. The law firm had previously denied having the original will, but did finally admit to having a copy of the will.

2. Conversely, we are aware of the possible motivation of Administrator to not find the original will. Under the tendered will, Administrator would receive $10 from his father's estate. As an heir at law in an intestate estate, he would receive in excess of $100,000. However, this court must accord great weight to the impressions and fact finding of the trial court, which considered, and apparently disregarded, such speculation. While this court, in equitable cognizance, may examine and weigh the evidence before the trial court, deference must be given to the trial court's

¶5 Administrator filed a demurrer to Granddaughter's evidence August 18, 1999, which the trial court sustained after it conducted an evidentiary hearing. Granddaughter appeals.

### Analysis

¶6 The parties stipulate that Decedent executed an original will, and that the original will cannot be located. The parties stipulate the document which Granddaughter sought to introduce is a photostatic copy of the original, executed will. The photocopy does not bear original signatures or a raised notary seal. Two of the executing witnesses testified as to the validity of their signatures, but had no independent recollection of the contents of the will.

### Issues

¶7 There are two issues tendered for our resolution. The first issue, apparently one of first impression, is whether a photocopy of an executed original will sufficiently complies with 84 O.S. Supp.1999, § 55, to be admitted to probate in lieu of the original executed will. The second issue is whether the trial court erred in refusing to admit the photocopy as evidence of a lost or destroyed will, pursuant to 58 O.S. Supp.1999, § 82. We answer both issues in the negative.

### Photocopy of Original Executed Will

■ ¶8 The probate court was presented with a photocopy of the original, executed will. The original itself has not been produced. Title 84 O.S. Supp.1999, § 55, requires, in relevant part, that:

Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:

1. It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto.

determination of the facts and issues before it as well as the credibility it assigns to the witnesses. *Manhart v. Manhart*, 1986 OK 12, 725 P.2d 1234; *Gorham v. Gorham*, 1984 OK 90, 692 P.2d 1375;

■ ¶9 The Oklahoma Supreme Court in *In re Shaw's Estate*, 1977 OK 237, 572 P.2d 229, reviewed a controversy wherein the probate court was presented with a duplicate of a will that was *itself* executed by the testator and his witnesses. There was evidence that the testator executed both an original and the duplicate. The original will was not produced, but the trial court correctly admitted the executed duplicate into probate. The *Shaw* court stated:

We are called upon to decide and rule that a presumption of revocation of a will arises from failure to account for or to produce all copies of executed duplicate wills.

. . . .

If the "duplicate" fully executed will or as it is sometimes described "duplicate original" will is of equal force or like import as its executed counterpart, then presenting the remaining executed copy for probate overcomes any presumption of revocation arising from loss or failure to find the "testator's copy." . . .

*Id.*, 1977 OK 237 at ¶¶1, 19, 572 P.2d at 230, 232.

¶10 In the instant case there is no dispute that the original will was properly executed and witnessed, or that Decedent possessed testamentary capacity. The narrow issue before us is whether *Shaw* should be extended to permit the introduction of this photocopy. We hold it should not.

¶11 The duplicate will in *Shaw* complied with 84 O.S. Supp.1999, § 55. Although the document was a duplicate of the original, the testator nevertheless formally executed the duplicate and adopted it as a duplicate of his original last will and testament. In the case in controversy, the photocopy reproduces Decedent's signature, but the document itself does not contain Decedent's original signature nor those of his witnesses. Thus, this document is not in compliance with 84 O.S. Supp.1999, § 55, and cannot be admitted to probate.[3] The trial court correctly deter-

*Fast v. Fast*, 1989 OK CIV APP 31, 787 P.2d 1288.

**3.** Administrator advances an interesting public policy concern in his answer brief. Administra-

mined Granddaughter could not prove the document was Decedent's last will, and therefore properly granted the demurrer.

### Lost Will

¶ 12 Granddaughter alternatively attempted to have the photocopied will admitted into probate as evidence of a lost will, pursuant to 58 O.S. Supp.1999, § 82. The trial court ruled Granddaughter failed to meet her burden of proof. We agree.

When the lower court considers a demurrer to the evidence or a motion for directed verdict, "it must consider as true all evidence and all reasonable inferences favorable to the party against whom the demurrer or motion is directed, and disregard any conflicting evidence which is favorable to the demurrant or movant." A demurrer or motion for directed verdict should be overruled unless there is an absence of evidence or proof which shows a right to recover on the part of the party opposing the demurrer or motion. Stated otherwise, the demurrer or motion should be overruled unless the party opposing the demurrer or motion has not demonstrated a prima facie case for recovery. Likewise, a motion for judgment notwithstanding the verdict is proper under circumstances in which the moving party attacks the sufficiency of the evidence to support the verdict only when a directed verdict should have been granted.

*Joffe v. Vaughn,* 1993 OK CIV APP 169, ¶ 9, 873 P.2d 299, 302–3 (footnotes omitted).

¶ 13 "[F]ailure to produce or find a will known to have been in the possession of the testator or readily accessible thereto prior to his death, raises a presumption of revocation of such instrument." *In re Shaw's Estate,* 1977 OK 237 at ¶ 18, 572 P.2d at 232.

¶ 14 Section 82 sets out the requisite proofs necessary to prove a lost will:

No will shall be proved as a lost or destroyed will, *unless the same is proved to have been in existence at the time of the death of the testator or is shown to have been fraudulently destroyed in the lifetime of the testator,* nor unless its provisions are clearly and distinctly proved by at least two credible witnesses. For purposes of this section, a copy of the alleged lost or destroyed will can be admitted into evidence, whether or not the copy reflects the signature or signatures appearing on the original will, if the copy is properly identified, and the court shall determine what probative value, if any, is to be assigned to such copy. (Emphasis added.)

¶ 15 The trial court held Granddaughter failed to prove a valid will existed at the time of Decedent's death which had not been purposefully or fraudulently destroyed during his lifetime. Again, we agree. Granddaughter's evidence, taken in its best light, cannot prove the original will existed at the time of Decedent's death.

### Conclusion

¶ 16 The trial court correctly determined that a photocopy of an original, executed will, which itself did not contain the original signature of the testator, did not comply with the requisites of 84 O.S. Supp.1999, § 55, nor with the holding of *In re Shaw's Estate.* Further, the probate court held Granddaughter was unable to prove a prima facie case to admit the photocopy to probate as a lost will. The trial court's order is affirmed.

¶ 17 AFFIRMED.

¶ 18 STUBBLEFIELD, J., and REIF, J., concur.

---

tor points out the ease with which an individual, using common office computers, scanners, and software, could create an unauthorized will, scan and reproduce an authentic signature from another document, and merge the authentic signature and the bogus document. After making a photocopy of the bogus document, the final result would be indistinguishable from a photocopy of an authentic document. While the authenticity of the document in this case is not in question, the statutory requirement of an original signature on reproduced documents would serve as a safeguard against such an acts.