OSCN Found Document:ESTATE OF CUNNINGHAM v. CHERYL MOORE et. al.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ESTATE OF CUNNINGHAM v. CHERYL MOORE et. al.2025 OK 72Case Number: 121999Decided: 10/14/2025THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 72, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE ESTATE OF JIMMY FRED CUNNINGHAM, DECEASED.

CHERYL MOORE and OKLAHOMA CITY COMMUNITY FOUNDATION, INC., Appellants,
v.
LISA MCCLENDON, Appellee.

ON APPEAL FROM THE DISTRICT COURT OF JOHNSTON COUNTY, 
STATE OF OKLAHOMA, THE HONORABLE LAURA J. CORBIN, 
ASSOCIATE DISTRICT JUDGE

¶0 Contesting a probate proceeding denying admission of an alleged 2019 Will, Moore and Oklahoma City Community Foundation, Inc. ("OCCF") (collectively "Appellants") appeal the district court's ruling: (1) determining venue was proper in Johnston County; (2) determining that Cheryl Moore ("Moore") had renounced her right to an appointment as personal representative under the 2018 Will; and (3) admitting the 2018 Will to probate instead of the later alleged 2019 Will. On the Court's motion, this matter was retained for disposition in the Oklahoma Supreme Court.

ORDER OF THE DISTRICT COURT IS AFFIRMED IN PART 
AND REVERSED IN PART.

Steven C. Davis, Stacey D. Spivey, Elizabeth A. Price, and Abigael J. Ray, Hartzog Conger Cason, LLP, Oklahoma City, Oklahoma, for Appellants Cheryl Moore and the Oklahoma City Community Foundation, Inc.

Makayla Coppedge, Coppedge Law Firm, Tishomingo, Oklahoma, for Appellee Lisa McClendon.

KANE, J.:

¶1 This matter originated from an interlocutory order entered in a probate proceeding currently pending in Johnston County, Oklahoma. The Decedent, Jimmy Fred Cunningham, died on June 6, 2022 in Oklahoma County. Appellee Lisa McClendon ("McClendon") filed a probate petition in Johnston County seeking to probate Decedent's May 15, 2018 Last Will and Testament (the "2018 Will"). Cheryl Moore ("Moore") and the Oklahoma City Community Foundation, Inc. ("OCCF") filed an objection to the Probate Petition asserting that venue should be in Oklahoma County and that Decedent had executed a subsequent Will on March 27, 2019 (the "2019 Will"), which explicitly revoked the 2018 Will. The trial court found that venue was proper in Johnston County. It also found the 2019 Will did not comply with 84 O.S.2011, § 5558 O.S.2011, § 5

FACTS AND PROCEDURAL HISTORY

¶2 In January of 2022, Mr. Cunningham's journey to Oklahoma County began when he was found very ill and having difficulty breathing at his home in Johnston County, Oklahoma. Because of his condition, Decedent was taken to a hospital in Tishomingo, Oklahoma, for medical treatment. After being evaluated by the hospital in Tishomingo, Decedent was transported to Mercy Hospital in Oklahoma City. After Decedent's condition stabilized at Mercy, he was transferred to a skilled nursing facility in Oklahoma City, where he continued to receive medical treatment and physical therapy. Once Decedent's condition improved, he was moved to an assisted living facility in Oklahoma County. Decedent remained at the assisted living center for approximately two months until his health took a turn for the worse on May 24, 2022, when he required immediate surgery, again at Mercy. Decedent died in the hospital in Oklahoma County on June 6, 2022.

¶3 At the time of his death, Decedent owned both real and personal property in Johnston County, Oklahoma. Until his health problems in 2022, Decedent had lived exclusively on his farm in Johnston County for approximately four years. Prior to moving to Johnston County in 2018, Decedent owned and resided in a home in Oklahoma City, Oklahoma County, for approximately thirty-seven years. During the time Decedent lived in Oklahoma City, he would occasionally visit his property in Johnston County and stay on his farm while he visited.

¶4 During the Decedent's many years of living in Oklahoma City he came to know Appellant Cheryl Moore. Initially, Decedent was Moore's hairdresser, while Moore helped Decedent with his tax returns and estate planning. Over their forty-year working relationship, they became close friends.

¶5 In 2014, Decedent asked his long-time attorney, Peter White, to prepare a will for him, which White did. Four years later, in 2018, Decedent moved from Oklahoma City to Johnston County to live on his farm. Lisa and Benny McClendon were Decedent's neighbors in Johnston County. Mr. McClendon helped Decedent with the upkeep on his farm in exchange for Decedent letting McClendon keep his horses on the property.

¶6 In May of 2018, Decedent suffered a stroke and Mrs. McClendon scheduled an appointment for Decedent with the Little Law Firm in Madill, Oklahoma. The McClendons drove Decedent to this appointment on May 15, 2018. A lawyer at the Little Law Firm drafted the 2018 Will for Decedent, which Decedent executed on the same day. The 2018 Will names Moore as the Personal Representative and devises the entire estate to Mr. and Mrs. McClendon. Mr. and Mrs. McClendon were not present during Decedent's meeting with the lawyer or when Decedent executed the 2018 Will.

¶7 On March 27, 2019, Decedent met with his previous lawyer, Mr. White, and created a revocable trust, titled the Jimmy F. Cunningham Revocable Living Trust, dated March 27, 2019 (the "Trust"). In addition to creating the Trust, Decedent executed the 2019 Will. The 2019 Will contained a provision which expressly revoked all prior wills of Decedent. The 2019 Will names Moore as the personal representative of Decedent's estate and left the residue of Decedent's assets to the Trust. Pursuant to the Trust Agreement, Appellant Oklahoma City Community Foundation, Inc. (OCCF) would receive the residuary of assets in the Trust, then hold, administer, and disburse them for the benefit of Murray State College in Tishomingo, Oklahoma.

¶8 On October 18, 2023, Mrs. McClendon filed a petition for probate of Decedent's 2018 Will. On November 6, 2023, Appellants Moore and OCCF filed an objection to the petition for probate of the 2018 Will, which they later amended, and argued that Decedent's 2019 Will revoked the 2018 Will. Further, they asserted that the 2019 Will should be admitted to probate in Oklahoma County, not Johnston County, because Decedent resided in Oklahoma County at an assisted living center at the time of his death.

¶9 The district court held an evidentiary hearing on January 5, 2024 and then: (1) found venue was proper in Johnston County because Decedent resided there at the time of his death; (2) determined that Moore had renounced her right to an appointment as personal representative under the 2018 Will because Moore failed to file Decedent's 2018 Will for probate within thirty days of Decedent's death; and (3) admitted the 2018 Will to probate. It is from this order that Moore and OCCF appeal.

STANDARD OF REVIEW

¶10 Probate proceedings are of equitable cognizance. In re Estate of Fulks, 2020 OK 94477 P.3d 1143In re Estate of Sneed, 1998 OK 8953 P.2d 1111Fulks, 2020 OK 94In re Estate of Holcomb, 2002 OK 9063 P.3d 9de novo standard of review. Fulks, 2020 OK 94De novo review affords this Court plenary, independent, and non-deferential authority to interpret the law. In re Estate of Landing, Jr., 2023 OK 117539 P.3d 1286

DISCUSSION

I. The District Court's Ruling that Decedent was a Resident of Johnston County at the Time of His Death is Not Clearly Contrary to the Weight of the Evidence.

¶11 Venue for probate actions in Oklahoma is governed by 58 O.S.2011, § 5See 58 O.S.2011, § 5In re Fulks, 2020 OK 94See 58 O.S.2011, § 5

¶12 Under Oklahoma law, "[r]esidence is defined as the place where one's habitation is fixed without the present purpose of removing therefrom. It is synonymous with 'Domicile.'" Jones v. Burkett, 1959 OK 221346 P.2d 338Southwestern Greyhound Lines v. Craig, 1938 OK 30480 P.2d 221See Jones, 1959 OK 221Id. ¶ 13, at 341; Suglove v. Oklahoma Tax Commission, 1979 OK 168605 P.2d 1315See Jones, 1959 OK 221Suglove, 1979 OK 168Suglove, 1979 OK 168

¶13 Appellants argue that Decedent was a resident of Oklahoma County at the time of his death because the record demonstrates that: (1) during the four years Decedent lived in Johnston County, he did not make any improvements to the home he owned; (2) Decedent expressed to Moore on multiple occasions that he had made a mistake in moving from Oklahoma City and he wanted to move back; (3) upon returning to Oklahoma City for medical care, Decedent made efforts to locate and purchase property in Oklahoma City, but at the time of his death, he had not yet purchased any property; (4) Decedent always regretted selling his house in Oklahoma City; and (5) Decedent expressed his intent to live permanently in Oklahoma City during his five-month medical stay. Appellants allege this evidence establishes Decedent's residence in Oklahoma County at the time of his death. They allege it first shows Decedent's actual abandonment of his residence in Johnston County, followed by his actual residence in Oklahoma County at the assisted living center, coupled with his intent to remain in Oklahoma County.

¶14 Contrary to the assertions of Moore, McClendon relies on a number of Oklahoma cases to support her position that Johnston County was the Decedent's residence at the time of death, including James v. Sanders, 1923 OK 690218 P. 877Anderson v. Jackson, 1935 OK 17041 P.2d 815James v. Sanders, the issue was whether Love County or Carter County had jurisdiction over the decedent's probate proceeding. In James, the decedent was a very young child when her parents died so she went to live at St. Agnes Academy -- a convent, in Carter County. See James, 1923 OK 690Id. As a result, in the spring of 1919, she was sent to the Tubercular Sanitarium for Indians in Talihina, Oklahoma. Id. A year later, she left the sanitarium and visited a classmate, Dora Sanders, and her husband, Henry Sanders, at their home in Love County. While in Love County, she executed her will, and she remained there for approximately twelve days until one of her teachers and a classmate from St. Agnes came to the Sanders' home to talk to her about her health and invited her to go back to St. Agnes, "which she readily consented to do, and signified a desire to return to the academy, which she had always regarded as her home after the death of her mother." Id. The decedent thereafter died in Carter County at St. Agnes in June 1920. Id. ¶ 2, at 878.

¶15 The issue on appeal in James was whether the county court in Love County had jurisdiction over the probate proceedings. Id. In reaching its decision and ultimately reversing the district court, the Court:

carefully considered the evidence in the record, and while it may be conceded that there is evidence tending to show that Cora James left the sanitarium at Talihina with the intention of making her home with Dora Sanders in Love county, yet we are unable to wholly ignore the undisputed testimony that shows that she was anxious, after having resided for 12 days on the farm of the petitioner in Love county, to return to the academy, where she had been reared, educated, and given a home from early childhood, until she reached majority, and until she was sent to the sanitarium as a patient.

James, 1923 OK 690 concluded that it was the decedent's intent, in returning to St. Agnes in Carter County, to continue to reside in said County for the remainder of her life as her permanent residence. Id. As such, the Court determined venue was proper in Carter County.

¶16 Similarly, in Anderson, the question was whether there was sufficient evidence to show that the decedent, after having established his residence in McCurtain County within the meaning of the statute, See Anderson, 1935 OK 170Id. ¶ 1, at 815. At the time of his death, the decedent in Anderson owned no real or personal property in Choctaw County, with the exception of a few small personal items. Id. ¶ 2, at 815.

¶17 The decedent in Anderson had gotten a divorce approximately one year earlier in McCurtain County. Id. ¶ 3, at 815. After the decedent's divorce, he went to Hugo, Oklahoma, in Choctaw County to live with his mother without taking any of his household goods with him. Id. ¶ 4, at 815. Instead, he used his relatives' furniture or rented furnished apartments. Id. There was evidence presented that decedent still considered Bethel, Oklahoma, in McCurtain County to be his home, and he made frequents visits to McCurtain County. Id. We held that there was insufficient evidence to show that the decedent's legal residency in McCurtain County had been abandoned. Id. ¶¶ 9-11, at 816.

¶18 Like Jackson and Anderson, the facts in this case do not support the abandonment argument. Decedent did not abandon his residence in Johnston County when he came to Oklahoma County. All of the late-life moves made by the Decedent were medically driven decisions, not housing choices. Ultimately, Decedent was transferred to an assisted living facility in Oklahoma County where he continued to receive medical treatment for approximately two months. The entirety of Decedent's medical treatment in Oklahoma County lasted approximately five months.

¶19 Like the decedent in James, Decedent was a patient when he was transported to Oklahoma County via ambulance. He was a patient at the hospital, a patient at the skilled nursing facility, a patient at the assisted living center, and a patient once again at the hospital in Oklahoma County where he ultimately passed away. Although Decedent was present in Oklahoma County for about five months receiving medical care, which is clearly longer than the twelve days decedent was present in Love County in James, the record establishes that Decedent was present in Oklahoma City for the sole purpose of receiving medical care and thus, he did not legally abandon his residence in Johnston County with the intent to remain in Oklahoma County. As such, we hold these facts, standing alone, are not sufficient to warrant abandonment of Decedent's residency in Johnston County under Oklahoma law.

¶20 Moore asserts that Decedent expressed his intent to live permanently in Oklahoma City during his five-month medical stay. Anderson is also instructive in this regard. In Anderson, the Court made note of the "considerable conflict in the evidence, which [was] voluminous, as to whether he [decedent] and his wife had become reconciled and had lived together as husband and wife after the divorce." Anderson, 1935 OK 170

¶21 Ultimately, residency is a question of fact to be determined by the district court, and such determination is conclusive upon appeal unless clearly against the weight of the evidence. See Burke v. Burke, 1926 OK 673249 P. 1110and been well enough to establish actual residency) sufficient to prove abandonment of his original residence.

¶22 We are further guided by our prior precedent in In re Davis' Estate, 1935 OK 24243 P.2d 115Breedlove v. Tulsa County Court, 1935 OK 110158 P.2d 305In re Davis' Estate, we found that decedent was still a resident of Craig County despite the fact that at his last illness, he was away from his home. See In re Davis' Estate, 1935 OK 242Id. Similarly, in Breedlove v. Tulsa County Court, we concluded the decedent never abandoned her established residence and was still a resident of Tulsa County where her homestead remained, despite the fact that she had lived in Sequoyah County with her mother for the preceding years prior in order to receive the care she required because she was an invalid. See Breedlove,1935 OK 1101

¶23 Appellants argue that these cases are distinguishable because there was no evidence presented to the court in either of those cases that the decedent ever intended to abandon his or her domicile, while the record in this case contains Moore's statements that the Decedent intended to remain in Oklahoma County.

¶24 We are not persuaded that the cases are distinguishable, as a review of the record herein shows that the Decedent was in Oklahoma County for the purpose of receiving medical care, and all other evidence was in conflict. The conclusion by the district court that Johnston County was the County of Decedent's residence at the time of his death, although disputed by Moore's testimony, is not contrary to the clear weight of the evidence as reflected by the whole record, and that part of the order is affirmed.

II. The District Court Was Correct in Ruling that a Copy of the 2019 Will Should Not be Admitted to Probate as Decedent's Last Will and Testament.

¶25 The proffered 2019 Will was a photocopy of the alleged last will and testament, which testimony alleged was copied prior to full and final execution. "When a will is offered for probate the singular concern of the court is the factum of the will, which consists of three elements: 1) whether the will has been executed with the requisite statutory formalities; 2) whether the maker was competent to make a will at the time; and 3) whether the will was the product of undue influence, fraud, or duress." In re Estate of Speers, 2008 OK 16179 P.3d 1265 see In re Estate of Holcomb, 2002 OK 90prima facie showing that the will is adequate for probate; then the burden shifts to the contestants to establish the issues presented by their contest. Speers, 2008 OK 16In re Free's Estate, 1937 OK 708

¶26 The elements of a valid will and the method for making a self-proved will are found at 84 O.S.2011, § 55

Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:

1. It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto.

2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them, to have been made by him or by his authority.

3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will.

4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence.

5. Every will, other than a holographic and a nuncupative will, and every codicil to such will or to a holographic will may, at the time of execution or at any subsequent date during the lifetimes of the testator and the witnesses, be made self-proved, and the testimony of the witnesses in the probate thereof may be made unnecessary by:

a. the acknowledgment thereof by the testator and the affidavits of the attesting witnesses, each made before an officer authorized to take acknowledgments to deeds of conveyance and to administer oaths under the laws of this state, such acknowledgments and affidavits being evidenced by the certificate, with official seal affixed, of such officer attached or annexed to such testamentary instrument. . . .

84 O.S.2011, § 55

¶27 Here, there is no allegation that Decedent was incompetent to make a will, or that the 2019 Will was the product of undue influence, fraud, or duress. As such, the first issue before us is whether the 2019 Will was executed with the requisite statutory formalities. 84 O.S., § 5584 O.S., § 55See Speers, 2008 OK 16

¶28 There was testimony at trial that the original 2019 Will was properly executed but that the whereabouts of said Will was unknown. A photocopy of the partially-completed instrument was thus offered for probate.

¶29 The trial court relied on In re Estate of Goodwin, 2000 OK CIV APP 14718 P.3d 37384 O.S., § 55Goodwin, the Court of Civil Appeals denied probate of a photocopy of an otherwise properly executed original will. Id. ¶ 10, at 375. The Court of Civil Appeals declined to extend our holding in In re Shaw's Estate, 1977 OK 237572 P.2d 229See Goodwin, 2000 OK CIV APP 147Shaw contained original signatures and complied with 84 O.S., § 55Goodwin, the photocopy of the will did not include original signatures--only photocopies. Id. ¶ 11, at 375. We agree with the reasoning in Goodwin and conclude that the district court was correct in ruling that the photocopy of the 2019 Will should not be admitted to probate as Decedent's Last Will and Testament pursuant to 84 O.S., § 55

¶30 There is also a statutory procedure available, however, whereby a copy of a will may be admitted in place of the original. 58 O.S., § 8258 O.S.2011, § 82

No will shall be proved as a lost or destroyed will, unless the same is proved to have been in existence at the time of the death of the testator or is shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses. For purposes of this section, a copy of the alleged lost or destroyed will can be admitted into evidence, whether or not the copy reflects the signature or signatures appearing on the original will, if the copy is properly identified, and the court shall determine what probative value, if any, is to be assigned to such copy.

58 O.S., § 82 in existence at the time of death of the testator" or else show that the original was ". . . fraudulently destroyed in the lifetime of the testator . . ." 58 O.S., § 82See Janzen v. Claybrook, 1966 OK 200420 P.2d 53158 O.S., § 82

¶31 The burden was on the proponents to prove the 2019 Will was in existence at the time of the death of the Decedent. See Janzen, 1966 OK 20058 O.S., § 82

III. The District Court Was Correct in Admitting the 2018 Will to Probate as Decedent's Last Will and Testament because the 2019 Will did not Revoke the 2018 Will.

¶32 If the 2019 Will was insufficient to earn admission to probate, did it nevertheless suffice to revoke the 2018 Will? We affirm the trial court's holding that it did not. Title 84 O.S.2011, § 101

1. By a written will or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which a will should be executed by such testator..."

84 O.S., § 101

¶33 The trial court ruled that the 2019 Will did not revoke the 2018 Will because the copy of the 2019 Will failed to comply with the execution statute, 84 O.S., § 55

¶34 We are guided by Leard v. Askew, 1911 OK 37Leard, we dealt with a subsequent will that contained a clause expressly revoking an earlier will. However, it was undisputed that the subsequent will was defectively executed. Id. ¶ 2, at 251. The issue on appeal in Leard was whether the revocation clause was effective, even if in all other aspects the subsequent will was invalid. Id. We held that it was not, following the general rule that:

[a] subsequent will containing a clause revoking an earlier will must, . . . be admitted to probate before the clause of revocation can have any effect, and the same kind, quality, and method of proof is required for the establishment of the subsequent will as was required for the establishment of the former will. . . if such subsequent will is defectively executed, the revocatory clause will not take effect.

Id. ¶ 3, at 251 (internal citations omitted).

¶35 Appellants further argue that the 2018 Will was revoked by the 2019 Will's express revocation clause, even though the latter was not offered for probate, citing Puckett v. Brittain, 1931 OK 6043 P.2d 876Puckett, a 1916 will was offered for probate, but was contested due to the execution of a subsequent will in 1923. The 1923 will was later determined to have been canceled or destroyed by the decedent. The issue on appeal in Puckett was the admissibility of the evidence, not the weight of the evidence, so that the trial court could determine whether the 1923 will revoked the 1916 will. See Puckett, 1931 OK 604Puckett, the district court in this case allowed into evidence the copy of the 2019 Will. Puckett, the 1923 will itself was not offered into evidence.

¶36 Another distinguishing factor between this case and Puckett is that the district court in this case allowed into evidence testimony of the subscribing witness (attorney Dawson) and the attorney who drafted the 2019 Will (attorney White), whereas the trial court in Puckett excluded similar testimonial evidence altogether concerning the 1923 will. See Puckett, 1931 OK 604Puckett did not even consider or weigh the testimony of the witnesses concerning the execution of the 1923 will based on the incorrect theory that such evidence was not admissible unless and until it was offered for probate. See Puckett, 1931 OK 604Id. ¶ 6, at 877 (emphasis added). Because the trial court incorrectly cut short the analysis in Puckett, we remanded the case back to the trial court for a new trial to delve into these very issues. Id. ¶¶ 9-10, at 877. However, in the present case, because the district court properly admitted the copy of the 2019 Will into evidence and properly admitted the testimony concerning the execution of the 2019 Will, our case is distinguishable from Puckett. Moreover, in Puckett the 1923 will appeared to meet the requirements of 84 O.S., § 55

¶37 Applying 84 O.S., § 101Leard to the facts in this case, we conclude that it was not clearly contrary to the weight of the evidence for the district court to determine that the 2019 Will did not revoke the 2018 Will. No fully executed 2019 Will was presented in conformity with 84 O.S., § 55

IV. It was Clearly Contrary to the Weight of the Evidence for the District Court to Conclude that Moore Renounced Herself as the Personal Representative of Decedent's Estate.

¶38 In this case, both the 2018 Will and the 2019 Will name Moore as the personal representative of Decedent's estate. Despite both Wills clearly naming Moore as the Personal Representative, McClendon sought to be named Personal Representative based on her claim that Moore had renounced her right to appointment by failing to timely file a probate petition within thirty days of Decedent's death. Title 58 O.S.2011, Section 108 provides:

If the person named in a will as executor, for thirty (30) days after he has knowledge of the death of the testator, and that he is named as executor, fails to petition the proper court for the probate of the will, and that letters testamentary be issued to him, he may be held to have renounced his right to letters, and the court may appoint any other competent person administrator, unless good cause for delay is shown.

58 O.S., § 108

¶39 The sole factor apparently relied upon by the district court in making its determination that Moore had renounced herself as person representative, was the passage of thirty days -- the district court's order cites no other evidence or testimony to support its decision.

¶40 McClendon argues that the following evidence supports the district court's decision: (1) that Moore was aware of the Decedent's death; (2) that Moore was generally aware of the Decedent's 2018 Will; and (3) that Moore was aware there were assets not in the Decedent's Trust and that a probate was necessary. Assuming, arguendo, that these are the facts, it is still insufficient to trigger renunciation under the statute.

¶41 Moore asserts that she was unaware that she was named as Personal Representative of Decedent's Estate under either his 2018 Will or 2019 Will at the time of his death, or anytime thereafter, up and until McClendon sought to admit the 2018 Will to probate. Moore further asserts that she never had possession of the 2018 Will (or the 2019 Will).

¶42 Moore cites to Secrest v. Secrest, 1930 OK 328Secrest, we addressed the issue of a named personal representative's waiver and/or renouncement of said appointment when the named party had no knowledge of the appointment and failed to file a probate matter within thirty days of the decedent's death. Id. ¶ 10, at 92. It was only after probate had been filed by the widow of the deceased in Secrest, that the named personal representative in the decedent's will, the testator's son, became aware that his father, the deceased, had named him as the personal representative. Id. ¶ 10, at 92. Upon learning of this fact, the son appeared at the probate hearing and contested the widow's appointment as personal representative of the decedent's estate and sought for his own appointment instead. Id. The widow, who had possession of the will, argued the son had waived his right to appointment as executor because no good cause had been shown for son's delay in petitioning for probate more than 30 days after death of the testator. Id. The county court agreed with the widow and found the son had forfeited his right to appointment as executor of the decedent's estate and the district court reversed on appeal. Id. ¶¶ 2-3, at 91. We agreed with the district court and held that the son had not forfeited his right to act as the personal representative and that the son had "shown good cause for delay and waived no rights he may have under the will." Id. ¶ 11, at 92.

¶43 As in Secrest, Moore alleges that she did not know she had been nominated as the personal representative of Decedent's Estate until well after thirty days had passed following the Decedent's death. See Secrest, 1930 OK 328

¶44 Additionally, even though Moore objected to probate of the 2018 Will, and objected to McClendon being named personal representative of the Decedent's Estate, these objections do not automatically extinguish her right to be named personal representative of Decedent's Estate under said 2018 Will. The record did not establish that the nominated personal representative was unfit or incompetent to serve.

¶45 The record discussed above reveals that Moore showed good cause for her delay in petitioning the trial court for probate of the Decedent's Will under 58 O.S., § 108 The district court finding that Moore renounced her right to be appointed personal representative of Decedent's Estate was clearly contrary to the weight of the evidence, and we reverse that part of the trial court order.

CONCLUSION

¶46 We affirm the trial court finding that venue is proper in Johnston County, as Decedent was a resident of Johnston County at the time of his death. We further affirm the district court's decision to admit the 2018 Will to probate. We affirm the trial court ruling that the alleged 2019 Will did not revoke the 2018 Will. However, we hold that it was clearly contrary to the weight of the evidence for the district court to conclude that Moore renounced her position as the Personal Representative of Decedent's Estate. The cause is remanded to the district court of Johnston County for further proceedings consistent with this opinion.

ORDER OF THE DISTRICT COURT IS AFFIRMED IN PART 
AND REVERSED IN PART.

CONCUR: Kuehn, V.C.J., Winchester, Edmondson, Combs, Gurich, Darby, Kane, Jett, JJ.

RECUSED: Rowe, C.J.

FOOTNOTES

58 O.S.2011, § 5

Wills must be proved, and letters testamentary or of administration granted in the following applicable situations:

1. In the county of which the decedent was a resident at the time of his death, regardless of where he died.

2. In the county in which the decedent died, leaving an estate therein, the deceased not being a resident of this state.

3. In the county in which any part of the estate of the deceased may be, where the decedent died out of this state, and the decedent was not a resident of this state at the time of his death.

4. In the county in which any part of the estate may be and the decedent was not a resident of this state, but died within it, and did not leave an estate in the county in which he died.

5. In all other cases, in the county where application for letters is first made.

Richards v. Huff, 1930 OK 547

84 O.S., § 55

84 O.S., § 55

See In re Estate of Ausley, 1991 OK 105818 P.2d 1226rd ed. 1947)).

Secrest, this Court analyzed identical statutory language to 58 O.S., § 108

If the person named in a will as executor, for thirty days after he has knowledge of the death of the testator, and that he is named as executor, fails to petition the proper court for the probate of the will, and that letters testamentary be issued to him, he may be held to have renounced his right to letters, and the court may appoint any other competent person administrator, unless good cause for delay is shown.

Secrest v. Secrest, 1930 OK 328294 P. 91

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105