In re Appeal in the Matter of the ESTATE of Christ WEBER, Deceased.

Willie WEBER, Plaintiff in Error,

v.

Adam SCHLOTTHAUER, Aaron Schlotthauer, Edward Schlotthauer, Louise Osmus, Hannah Barton and Ruby Blake, Defendants in Error.

No. 42584.

Supreme Court of Oklahoma.

July 7, 1970.

E. Blumhagen, Watonga, for plaintiff in error.

H. G. Tolbert, Watonga, for defendants in error.

LAVENDER, Justice.

This appeal involves a written instrument dated December 10, 1947, which purports to be the last will and testament of Christ Weber, deceased, and which the District Court of Blaine County, Oklahoma, on appeal from an order of the county court of that county denying admission thereof to probate, ordered admitted to probate as the last will and testament of said decedent.

The sole contention of the plaintiff in error, Willie Weber (who is the half-brother, and only heir-at-law, of the decedent) is that the district court erred in ordering the instrument admitted to probate, and in denying his motion for a new trial, because the proponents of the instrument failed to establish compliance with the provisions of 84 O.S.1941 § 55, and specifically, requirements 3 and 4 of that section. That statute provided:

"Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:

"1. It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto.

"2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them, to have been made by him or by his authority.

"3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,

"4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence."

The name of Christ Weber is signed at the end of the instrument. The names of James E. Durham, O. E. Durham, and O. G. Graalman are signed at the end of an "attestation clause" or certificate of attesting witnesses, which appears immediately below that signature and states:

"The foregoing instrument consisting of two pages, including attestation clause, was subscribed by Christ Weber in the presence of each of us, the undersigned, and at the same time declared by him to us to be his last will and testament, and each of us being well acquainted with the said Christ Weber and knowing him to be of sound and disposing mind, and not acting under duress, menace, fraud or undue influence, we thereupon, at the request of the said Christ Weber, in his presence and in the presence of each other, sign our names hereto as witnesses, this 10th day of December, 1947, at at Okeene, Oklahoma."

The evidence indicates that the instrument in question had been prepared by an attorney in Watonga, Oklahoma, at the written request of Christ Weber, and had been mailed by the attorney to Christ Weber, at Homestead, Oklahoma, on December 5, 1947 (five days before the date shown on the instrument), with proper instructions for the execution of a will and a suggestion that he take the will to a named bank in Okeene, Oklahoma, and ask three of the bank employees or officers to attest his signature and declaration. On the date of the instrument (which was almost 20 years prior to the district court hearing in question herein), the three persons whose names appear on the instrument as attesting witnesses were officers of that bank.

Mr. Graalman testified that he was 80 years of age, and had known Christ Weber since he (Weber) was a boy. He identified his own signature, and the signatures of Christ Weber, O. E. Durham and James E. Durham, on the instrument in question, and testified that he remembered the occasion on which the instrument was signed; that Christ Weber brought the document to his desk in the bank to sign, and asked for three witnesses (including this witness) to his "will;" that he did not remember whether Christ Weber asked for the Durhams as witnesses, but might have asked for them; that he (the witness) had the Durhams come to his desk for that purpose; that he then filled in the proper date in both places; that Christ Weber signed the instrument in the presence of the three witnesses, and then each of them signed it in Christ Weber's presence and in the presence of each other; and that he (the witness) understood at that time that he was witnessing the "will" of Christ Weber.

O. E. Durham and James E. Durham identified the signature of Christ Weber on the instrument in question from having seen his signature on checks coming into the bank, and each identified his own signature, and the signatures of the other two attesting witnesses, on the instrument, but neither of them remembered anything about the occasion on which he signed this instrument. One of them (O. E. Durham) thought he knew, as of the date of the instrument, something about the legal requirements for executing a will, but the other one (James E. Durham) was not certain on that point but thought that this probably was the first will he had witnessed.

The question of duress, menace, fraud or undue influence was not raised. Although it was stipulated that Christ Weber, a veteran of the first World War, had been declared incompetent in 1929, and had remained under guardianship until his death in March of 1966, there was evidence which would, reasonably, support a finding of testamentary capacity at the time of the execution of the instrument in question, and the contestant raises no question on that point.

The district court's journal entry of the order admitting the instrument to probate as a valid will and the last will and testament of Christ Weber, deceased, includes a finding by the court as follows:

"That the instrument propounded herein to probate as the last Will and Testament of Christ Weber was executed by the said Christ Weber on the 10th day of December, 1947, who, at the time of said execution, was of full age, of sound mind and memory and was not acting under duress, menace, fraud or undue influence, and said will was executed in all particulars as required by law."

As contended by the contestant, the basic principle of law in cases of this kind is stated in the first paragraph of this court's syllabi to the cases of McCarty et al. v. Weatherly et al. (1922), 85 Okl. 123, 124, 204 P. 632, and In re Stover's Will (1924), 104 Okl. 251, 231 P. 212:

"The burden of proof rests upon the proponent of a will to establish by a preponderance of the evidence that the will was executed and published according to the provisions of the statutes."

In the Stover case (which involved the matter of publication of the instrument as a will, as well as the matter of signing in the presence of the attesting witnesses), this court quoted the sixth paragraph of the syllabus to the McCarthy case:

" 'Where a nonholographic will is offered for probate and the evidence fails to show that the testatrix declared or published the instrument as her will in the presence of the subscribing witnesses the proponents have not established that the will was executed according to law, and the probate thereof should be denied;' "

and, in discussing the reason for such rules, quoted from Hill et al. v. Davis et al. (1917), 64 Okl. 253, 167 P. 465, 468:

" 'The right to dispose of property by will is a creature of the statute. The Legislature has the power, in granting the right, to determine and prescribe the form and manner in which it shall be exercised. In requiring that the testator shall declare to two attesting witnesses that the instrument not in his handwriting is his will, the Legislature no doubt intended it as a safeguard against imposition and fraud. The provisions of the statute quoted are mandatory, and there must be a substantial compliance therewith. * * *.' "

In the present case, the contestant points out that, in outlining what occurred at the time the instrument in question was signed by Christ Weber and the three subscribing witnesses, Mr. Graalman—the only one of the three witnesses who said he remembered anything about the occasion in question—made no direct statement, either on direct examination or on cross-examination, to the effect that Christ Weber, while in the presence of either one of the other two subscribing witnesses, ever asked him to sign the instrument as a witness or said anything about the instrument's being his will. And, as testimony to the effect that Christ Weber did neither of those required acts, insofar as either of the Durhams is concerned, the contestant refers to the following portion of the cross-examination of Mr. Graalman:

"Q. Yes, that's right. Now, Mr. Graalman, now when the witnesses were at your desk, what transpired?

"A. Christ wrote his name and after he had signed it, we in turn wrote our names as witnesses.

"Q. Yes, now you recall, is that all that transpired?

"A. So far as I remember, I was the last one on there, so I guess that was all of it."

Contestant cites the case of In the Matter of the Estate of Atohka, Deceased (1955), Okl., 282 P.2d 737, for the proposition that, under the "substantial compliance" rule, it is a sufficient compliance with paragraph 4 of the statute involved herein, if the testator, by words or conduct, apprises the attesting witnesses of his desire that they sign his will, but his mere physical presence during the witnesses' signing is not necessarily such compliance.

The proponents herein do not question the correctness of any of the above-mentioned rules as abstract principles of law, but relies upon the case of Goff et al. v. Knight et al. (1949), 201 Okl. 411, 206 P.2d 992. In that case, as in the present case, there was testimony as to the authenticity of the signature of the decedent (which, as in the present case, the instrument showed was at the end thereof), and as to the authenticity of the signatures of the two witnesses (which, as in the present case, the will showed were affixed to an attestation clause which was below the decedent's subscription), but, as in the present case, there was no direct testimony concerning publication or requesting the witnesses to sign as witnesses. The only real differences between the two situations are that, in that case, there was no direct testimony that the decedent subscribed the instrument in the presence of all of the subscribing witnesses or that the subscribing witnesses signed the instrument in the presence of the decedent, and the contestants in that case objected to the admission of the instrument into evidence, whereas the contestant in the present case not only did not object to the admission of the instrument into evidence but stated that it was unnecessary to admit it into evidence because it was a part of the files in the case and was what the case was about.

In Goff et al. v. Knight et al., supra, this court, in affirming the district court's order admitting the instrument to probate as the last will and testament of the decedent, held, in the first paragraph of its syllabus:

"Where the attestation clause recites due execution of a will, it creates a prima facie case of due execution of the instrument, which can be overcome only by clear and convincing evidence."

The much later case of In the Matter of the Estate of Hering, Deceased (1967), Okl., 426 P.2d 685, is to the same effect.

The contestant in the present case argues that the portion of the cross-examination of O. G. Graalman which is quoted hereinabove constitutes evidence that Christ Weber did not refer to the instrument in question as his will, in the presence of either of the other two subscribing witnesses, or otherwise declare to them that it was his will, and did not ask either one of them to sign the instrument as witnesses.

Particularly since Mr. Graalman was not asked about either of those matters, we are inclined to view his last answer, relied upon by the contestant ("So far as I remember, I was the last one on there, so I guess that was all of it"), as a statement to the effect that he was the last one to sign the instrument, and that the transaction ended when he signed the instrument. At any rate, that answer is not clear and convincing evidence of the decedent's failure to publish the instrument as his will or to request either one of the Durhams to sign as a witness.

In the Hering estate case, supra, this court, in affirming the district court's order admitting the instrument involved to probate, applied the well-established rule, set forth in the second paragraph of its syllabus to that opinion, that:

"The contest of a will is a matter of equitable cognizance and the trial court's findings and judgment therein will not be reversed on appeal, unless clearly against the weight of the evidence."

The findings and judgment of the district court in the present case are not clearly against the weight of the evidence.

Judgment affirmed.

BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON and McINERNEY, JJ., concur.