2008 OK 16

In the Matter of the ESTATE OF Shirley Joyce SPEERS,

Danny Speers, Lee Ann Fincher, and Sherry Ross, Appellants,

v.

Ann Speers, Appellee.

No. 103,813.

Supreme Court of Oklahoma.

Feb. 26, 2008.

David Youngblood, Atoka, OK, for Appellants.

Mark Morrison, Durant, OK, for Appellee.

KAUGER, J.

¶1 The issue presented is whether the trial court erred in admitting the contested will to probate. We find that it did.

## FACTS

¶2 On June 15, 1982, Shirley Joyce Speers (testatrix) signed a "Last Will and Testament" (will/instrument). It named her husband, Ralph Speers (husband) as her executor and Doyle Wesley Fincher as her alternate executor. It also gave her daughter, Sherry Arlene Ross, her household furnishings and appliances, and her son, Daniel Eugene Speers, her livestock. Her husband

was named the beneficiary of the rest of the estate, provided he paid the estate's expenses. If he failed to do so, his share was devised in equal parts to James Nelson Fincher and Jonathan Clyde Fincher, the testatrix's grandsons. The will expressly omitted LeeAnn Fincher, the testatrix's daughter. It was signed by Sadie B. Walton (Walton) and Walter Durbin (Durbin) as witnesses and notarized by Vicky Thomas (notary), but it was not stamped with a notary seal. The testatrix died on April 20, 1997, and the instrument was not probated at the time of her death.

¶3 At some point after his wife's death, the husband married Ann Speers (appellee). The husband died some time before June of 2005, and upon searching his records, his second wife discovered the will. She filed her petition on June 2, 2005, seeking to admit it to probate. The instrument submitted by the appellee contained several handwritten strikeouts and interlineations.[1] On June 7, 2005, the testatrix's children, Danny Speers, LeeAnn Fincher, and Sherry Ross (collectively, contestants) filed an objection to the petition for probate of the will and contest of the will, arguing that instrument was invalid because the original will was destroyed, thereby invalidating any copies.

¶4 On August 18, 2005, the trial court held a hearing on the matter and Durbin was called as a witness. Durbin testified that he remembered: 1) signing the instrument; 2) seeing the testatrix sign the instrument; and 3) that there were no strikeouts or interlineations on the document he signed.[2] Durbin testified that he had no recollection of: 1) being acquainted with Walton; 2) the location at which he signed the instrument; 3)

---

1. The handwritten portions of the instrument: 1) strike out the language naming the testatrix's grandsons as contingent beneficiaries of the husband's gift and insert the word "DAUGHTERS" above the stricken language; 2) strike out the language bequeathing the testatrix's household furnishings and appliances to Sherry Arlene Ross and insert the words "LIVESTOCK," "DANNY," and "SON" above the stricken language; and 3) partially strike out the language expressly omitting LeeAnn Fincher as a beneficiary. A copy of the will is attached to this writing.

2. Testimony of Walter Francis Durbin, Hearing on Petition, Aug. 18, 2005, Record p. 7–8, 11, provides in pertinent part:

Q. And did you, in fact, sign this document? This-or the original of this document?
A. Yes, sir.
. . .
Q. Did you see Ms. Speers sign the original of that document?
A. Yes, sir.
. . .
Q. . . . . [Y]ou don't believe any of those—I'll call them strikeouts or writeouts—none of those were on there when you signed it; is that true?
A. No, sir, I believe that it was a three-page typewritten document when she brought it to me.
Q. With no markings on it?

seeing Walton sign the instrument; 4) hearing the testatrix state aloud "this is my will;" 5) seeing the notary at the time he signed the instrument; or 6) seeing the testatrix initial the bottom of each page.[3] Durbin also gave the following testimony:

Q. All right. Do you remember where you may have been, wherever it was, when you signed the document?

A. I presume at the Church of Christ at Caney. She probably come to the church and asked me to sign it, I suppose, now, but I don't know that, positive.

Q. Okay, that's what we want to know, if you have a positive recollection of that. That's where you think you may been; is that right?

A. Could have been, yes.

Q. But as you sit here today-and correct me if I'm wrong-but as you sit here today you don't specifically remember this event, do you?

A. No.... [4]

Walton was not produced to testify.

■ ¶5 On August 18, 2005, the trial judge entered a court minute admitting the will to probate and appointing Doyle Wesley Fincher the executor. On September 12, 2006, the trial court filed a journal entry of judgment finding:

1) the will was a photocopy of an original with original signatures attached; [5]

3. Testimony of Walter Francis Durbin, see note 2, supra at 8–9, 11, 13, 15, 18, provides in pertinent part:

> Q. Are you familiar with Ms. Walton?
> A. No, I can't recall her, but I'm sure I knew her.
> . . .
> Q. All right. Do you remember where you may have been, wherever it was, when you signed that document?
> A. I presume at the Church of Christ at Caney. She probably come to church and asked me to sign it, I suppose, now, but I don't know that, positive.
> . . .
> Q. Okay. Do you have any remembrance, as you sit her today, of Sadie Walton being there in the same place with you when you signed that document?
> A. I don't have any recollection of it.
> . . .

2) the will was not self-proving because it contained no notary seal;

3) the will was required to be proved by subscribing witnesses under 85 O.S. § 55(5) and 49 O.S. § 5;

4) there must be a showing that one of the subscribing witnesses is deceased or insane if that witness cannot testify, and the appellee made that showing;

5) the will was valid and was admitted; and

6) Doyle Wesley Fincher was named executor.

¶6 On September 29, 2006, the contestants filed their petition in error. On February 22, 2007, the cause was assigned to the Court of Civil Appeals. On September 21, 2007, the Court of Civil Appeals affirmed the ruling of the trial court. On October 9, 2007, the contestants filed their petition for certiorari, and we granted certiorari on January 22, 2008.

¶7 **BECAUSE THERE WAS NOT SUFFICIENT EVIDENCE IN THE RECORD THAT THE INSTRUMENT WAS EXECUTED WITH THE PROPER STATUTORY FORMALITIES, THE INSTRUMENT SHOULD NOT HAVE BEEN ADMITTED TO PROBATE.**

■ ¶8 Probate proceedings are equita-

> Q. . . . Do you recall Ms. Speers declaring or saying out of her mouth, words of her mouth, that "This is my will"?
> A. I can't recall that.
> . . .
> Q. And Vicky Thomas, the notary, wasn't there, either was she?
> A. I couldn't say. I don't know.
> . . .
> Q. . . . [D]o you remember seeing anybody place those initials in the lower right-hand corner of each page of that document that's marked Petitioner's 1?
> A. No....

4. Testimony of Walter Francis Durbin, see note 2, supra at 9.

5. A photocopy of an executed will that has itself been executed by the testatrix and the witnesses is of equal force as its executed counterpart. *In re Estate of Shaw*, 1977 OK 237, ¶25, 572 P.2d 229; *In re Estate of Goodwin*, 2000 OK CIV APP 147, ¶9, 18 P.3d 373.

ble in nature.[6] Although this Court will examine and weigh the evidence, there is a presumption that the trial court's decision is legally correct and cannot be disturbed unless found to be clearly contrary to the weight of the evidence or to some governing principle of law.[7] Where the probate of a will is contested and the testimony is conflicting as to execution, the judgment of the trial court will not be disturbed if there is any substantial testimony supporting the judgment and finding.[8] If legally correct, a district court's ruling will not be reversed because of faulty reasoning, an erroneous finding of fact, or consideration of an immaterial issue.[9]

¶ 9 When a will is offered for probate, the singular concern of the court is the factum of the will, which consists of three elements: 1) whether the will has been executed with the requisite statutory formalities; 2) whether the maker was competent to make a will at the time; and 3) whether the will was the product of undue influence, fraud or duress.[10] The emphasis of the judicial process is to discern and effectuate the decedent's intent.[11] The burden of proof in the trial of a contest of the probate of a will is upon the proponents of the will to make a *prima facie* showing that the will is adequate for probate; then the burden shifts to the contestants to establish the issues presented by their contest.[12]

¶ 10 The elements of a valid will and the method for making a self-proved will are found at 84 O.S. Supp.2004 § 55.[13] Because there is no notary seal on the instrument, it is undisputed that the instrument is not a self-proved will.

¶ 11 Here, the contestants do not allege that the testatrix was incompetent to make a will, nor do they allege that the will was a product of undue influence, fraud, or duress. The contestants' allegation is that the proponent did not make an adequate showing that the instrument was executed with the following statutory formalities: 1)

6. *In re Estate of Holcomb*, 2002 OK 90, ¶ 8, 63 P.3d 9; *In re Estate of Wilder*, 1976 OK 113, ¶ 7, 554 P.2d 788; *Peace v. Peace*, 1931 OK 293, ¶ 0, 299 P. 451.

7. *In re Estate of Holcomb*, see note 6, supra; *In re Estate of Beal*, 1989 OK 23, ¶ 5, 769 P.2d 150; *In re Estate of Hess*, 1962 OK 74, ¶ 18, 379 P.2d 851.

8. *In re Stock's Will*, 1935 OK 662, ¶ 14, 49 P.2d 503; *In re Thomason's Estate*, 1925 OK 369, ¶ 9, 241 P. 739; *In re Will of Stires*, 1923 OK 764, ¶ 0, 219 P. 695.

9. *In re Estate of Holcomb*, see note 6, supra; *In re Estate of Maheras*, 1995 OK 40, ¶ 7, 897 P.2d 268.

10. *In re Estate of Holcomb*, see note 6, supra.

11. *In re Estate of Holcomb*, see note 6, supra; *In re Estate of Sneed*, 1998 OK 8, ¶ 8, 953 P.2d 1111; *Miller v. First Nat. Bank & Trust Co.*, 1981 OK 133, ¶ 8, 637 P.2d 75.

12. *In re Free's Estate*, 1937 OK 708, ¶ 0, 75 P.2d 476; *In re Elrod's Estate*, 1931 OK 603, ¶ 0, 6 P.2d 676; *In re Son–Se–Gra's Will*, 1920 OK 121, ¶ 5, 189 P. 865.

13. Title 84 O.S. Supp.2004 § 55 provides in pertinent part:

Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:

1. It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto.

2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them, to have been made by him or by his authority.

3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will.

4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence.

5. Every will, other than a holographic and a nuncupative will, and every codicil to such will or to a holographic will may, at the time of execution or at any subsequent date during the lifetimes of the testator and the witnesses, be made self-proved, and the testimony of the witnesses in the probate thereof may be made unnecessary by:

a. the acknowledgment thereof by the testator and the affidavits of the attesting witnesses, each made before an officer authorized to take acknowledgments to deeds of conveyance and to administer oaths under the laws of this state, such acknowledgments and affidavits being evidenced by the certificate, *with official seal affixed*, of such officer attached or annexed to such testamentary instrument.... [Emphasis added.]

there were two attesting witnesses; 2) the instrument was signed by the testatrix in the presence of both attesting witnesses or that the testatrix acknowledged to both witnesses that the signature on the instrument was hers; 3) the testatrix declared to both the attesting witnesses that the instrument was her will; and 4) that both attesting witnesses subscribed the instrument at the testatrix's request and in her presence.[14]

## A.

## The Trial Court Erred in Finding That There Were Two Subscribing Witnesses.

¶ 12 The burden of proof rests upon the proponent of the will to establish by preponderance of evidence that the will was executed and published according to law.[15] Title 58 O.S.2001 § 43 provides in pertinent part:

If the will is contested, all the subscribing witnesses who are present in the county, and who are of sound mind, *must* be produced and examined; and *the death, absence or insanity of any of them must be satisfactorily shown* to the court. If none of the subscribing witnesses reside in the county, and are not present at the time appointed for proving the will, or although such witnesses reside in the county and are insane or incompetent, and such facts are first made to appear to the court, either in contested or noncontested will cases, the court may admit the testimony of other witnesses to prove the sanity of

the testator and the execution of the will and, as evidence of the execution, it may admit proof of the handwriting of the testator and of the subscribing witnesses, or any of them . . . . [Emphasis added.]

These statutory provisions clearly reflect an intent that, in the event of a will contest, the testimony of the subscribing witnesses is essential to prove the proper execution of the will.[16] The contestants argue that Walton's death was not satisfactorily shown to the trial court.

¶ 13 While Durbin was called to testify in the matter, evidence concerning Walton is *de minimus*. The instrument contains the signature of a Sadie B. Walton in three places: 1) in the attestation clause; 2) at the end of the instrument; and 3) in the notary's section. The only evidence regarding Walton's absence was the following exchange between the appellee's counsel and Durbin:

Q: Are you familiar with Ms. Walton?

A: No, I can't recall her, but I'm sure I knew her.

Q: All right. Do you understand that she's now deceased?

A: I was told that.[17]

There is otherwise no evidence in the record that Walton was dead or unavailable at the time of the will contest. Section 43 mandates that all of the subscribing witnesses be present or that their absence or death must be "satisfactorily shown." [18]

---

**14.** The contestants have also alleged that the handwritten strikeouts and interlineations operate to revoke the instrument as a will. Any handwritten codicil must conform to the requirements for holographic wills. Because none of the handwritten changes to the will were signed or dated, the changes are not valid codicils. 84 O.S.2001 § 54.

A will may be revoked by physical act only if there is a physical act within the meaning of the statute, and if the act is performed within the intent and purpose to revoke. *In re Estate of Ausley*, 1991 OK 105, ¶ 13, 818 P.2d 1226; *In re Cabler's Estate*, 1927 OK 126, ¶ 11, 257 P. 757. A mere interlineation in a will after its execution is not a revocation, where nothing was added to or taken from the meaning and no intent to revoke was thereby indicated. *In re Ballard's Estate*, 1916 OK 271, ¶ 0, 155 P. 894. There was no showing by either party that the testatrix intended to revoke the will or that the testatrix,

or someone she directed, wrote the strikeouts or interlineations, so there cannot be a revocation. Because the handwritten portions of the will do not constitute valid codicils or a revocation, they must be disregarded.

**15.** *In re Estate of Bogan*, 1975 OK 134, ¶ 14, 541 P.2d 854.

**16.** *In re Estate of Johnson*, 1989 OK 98, ¶ 10, 780 P.2d 692.

**17.** Testimony of Walter Francis Durbin, see note 2, supra at 8.

**18.** Evidence of Walton's death was readily available to the appellee. A quick search of the Social Security Death Index shows that Walton died on August 15, 2000 and that her last place of residence was Atoka, Oklahoma. *http://ssdi. rootsweb.com/cgi-bin/ssdi.cgi.*

¶ 14 The statute does not define the term "satisfactorily," but this Court has recognized that the word "satisfy" means to be free from doubt, suspense, or uncertainty, to set the mind at rest, and satisfactory evidence, sometimes called "sufficient evidence," is an amount of proof which will ordinarily satisfy an unprejudiced mind beyond a reasonable doubt.[19] Under the facts presented, the trial court could not, as a matter of law, have made the requisite statutorily required finding that Walton's absence or death was "satisfactorily shown."

¶ 15 Durbin also testified that he was not sure whether Walton was present when he signed the will.[20] The trial court's determination that there were two subscribing witnesses based solely on Durbin's testimony that he couldn't recall Walton, that he had been told she was deceased, and that he wasn't sure she was present when he signed the will is clearly contrary to the weight of the evidence.[21]

### B.

### The Trial Court Erred in Finding Substantial Compliance with the Statutory Requirements of Publication by the Testatrix and the Presence of the Testatrix and the Subscribing Witnesses at the Signature of the Other.

¶ 16 Title 84 O.S. Supp.2004 § 55(2) requires that a testatrix sign her will in the presence of two attesting witnesses, or acknowledge to the witnesses that the signature was made by her or her authority. Title 84 O.S. Supp.2004 § 55(3) requires that a testatrix declare or publish to two attesting witnesses that an instrument is her will. Title 84 O.S. Supp.2004 § 55(4) requires that two witnesses must sign a will at a testatrix's request and in her presence. These are safeguards against imposition and fraud, and therefore require substantial compliance.[22] Substantial compliance relating to the publication of a will and attesting by witnesses is all that is required, and no formal request

19. In *Midland Valley R. Co. v. Barnes*, 1933 OK 26, ¶ 5, 18 P.2d 1089, the Court, quoting a Tennessee case, discussed whether a jury is to be satisfied whether evidence does or does not preponderate and examined the words "satisfy" and "satisfactory evidence." In *Board of Com'rs of Garfield County v. Anderson*, 1934 OK 6, ¶ 46, 29 P.2d 75, the Court described a requirement that intent be satisfactorily shown as that which is clear and unequivocal. "Satisfactory evidence" has been described as that evidence which ordinarily produces moral certainty or conviction in an unprejudiced mind, such as ordinarily satisfies such a mind beyond a reasonable doubt. *Shriver v. Union Stockyards Nat. Bank*, 117 Kan. 638, 232 P. 1062, 1066 (1925). Whatever "satisfactorily shown" is, it must be more than one witness' testimony that he couldn't recall the other witness, that he had been told she was deceased, and that he wasn't sure she was present when he signed the will.

20. Testimony of Walter Francis Durbin, see ¶ 4.

21. The contestants' counsel did not object to Durbin's testimony that he had been told that Walton was deceased. Title 12 O.S.2001 § 2104 provides in pertinent part:
    A. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and:
    1. If the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context
    . . .
    D. Nothing in this section precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.
In *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936), the United States Supreme Court has held: "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." The doctrine of plain error is rarely applied in civil cases and usually reserved to prevent a clear miscarriage of justice. *Chestnut v. City of Lowell*, 305 F.3d 18, 20 (1st Cir.2002); *Crawford v. Falcon Drilling Co., Inc.*, 131 F.3d 1120, 1123 fn. 3 (5th Cir.1997); *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1408 fn. 5 (10th Cir.1991).
    Here, we need not reach the question of whether the trial court's admission of Durbin's testimony was plain error. Even if the testimony was properly admissible evidence, the trial court's determination that there were two subscribing witnesses was clearly contrary to the weight of the evidence.

22. *In re Stover's Will*, 1924 OK 917, ¶ 7, 231 P. 212; *Hill v. Davis*, 1917 OK 340, ¶ 7, 167 P. 465 [overruled on other grounds in *In re Nitey's Estate*, 1935 OK 1218, ¶ 27, 53 P.2d 215]; *In re Estate of Mowdy*, 1999 OK CIV APP 4, ¶ 17, 973 P.2d 345.

that witnesses sign or express declaration that instrument is testator's will is required; but it is sufficient if the testator, by words or conduct, conveys to the witnesses that the instrument is his will and that he desires them to witness it.[23]

██ ¶ 17 The evidence of the testatrix's publication to Durbin offered by the appellee is the attestation clause and the following testimony by Durbin:

Q. . . . How did it happen that you became a witness to Ms. Speers' will, if this, in fact, is her will?

A. Well, she came to me and wanted me to witness a will. And I told her I would, and I did. . . .

Durbin also testifies that he saw the testatrix sign the instrument and that she was present when he signed the instrument.[24] However, other than the attestation clause, there is no evidence whatsoever that: 1) the testatrix signed the instrument in Walton's presence or acknowledged to Walton that the signature on the instrument was hers; 2) the testatrix published the instrument as her will to Walton; or 3) Walton signed the instrument in the testatrix's presence.

██ ¶ 18 This Court has held that where the attestation clause recites due execution of a will, it creates a *prima facie* case of due execution of the instrument, which can be overcome only by clear and convincing evidence.[25] In proceedings for the probate of an instrument as a will where it appears to have been duly executed, and the attestation is established by proof of the handwriting of the witnesses or otherwise, although their testimony is not available, or they do not remember the transaction, it will be presumed, in the absence of evidence to the contrary, that the will was executed in compliance with all the requirements of law.[26]

¶ 19 Here, there was no evidence offered by the appellee establishing the attestation clause either by handwriting analysis, or any other form of proof. This is not sufficient to create a *prima facie* showing of due execution of the instrument, and therefore the instrument should not have been admitted to probate. The error concerning Walton's unavailability coupled with the lack of evidence regarding its execution results in an instrument which should not have been admitted to probate.

23. *In re Estate of Hering*, 1967 OK 82, ¶ 0, 426 P.2d 685; *Speaks v. Speaks*, 1923 OK 404, ¶ 0, 224 P. 533; *In re Estate of Mowdy*, see note 22, supra.

24. Testimony of Walter Francis Durbin, see note 2, supra.

25. *In re Estate of Weber*, 1970 OK 131, ¶ 14, 471 P.2d 919; *Goff v. Knight*, 1949 OK 118, ¶ 0, 206 P.2d 992.

26. *Hobbs v. Mahoney*, 1970 OK 209, ¶ 12, 478 P.2d 956; *Goff v. Knight*, see note 25, supra at ¶ 13. Title 84 O.S.2001 145 addresses subscribing witnesses made unavailable by reason of incompetency. It provides:

If the subscribing witnesses to a will are competent at the time of attesting its execution, their subsequent incompetency, from whatever cause it may arise, does not prevent the probate and allowance of the will, if it is otherwise satisfactorily proved.

Several other jurisdictions also permit the execution of will to be established without the testimony of one or both of the subscribing witnesses, but most require the proponent to establish execution by some other method of proof. *In re Will of McCauley*, 356 N.C. 91, 565 S.E.2d 88, 92 (2002) [if witnesses are unavailable or have no memory of the event, execution may be established by other credible evidence]; *Upton v. Upton*, 26 Ark.App. 78, 759 S.W.2d 811, 813 (1988) [presumption of due execution if witness' handwriting matches]; *In re Estate of Nelson*, 447 A.2d 438, 439 (Del.1982) [if unavailable witness, execution may be established by other means]; *Modlin v. Riggle*, 399 N.E.2d 767, 770 (Ind.Ct. App.1980) [if witnesses unavailable, execution may be proven by handwriting per statute]; *Ross v. Carlino*, 119 N.H. 126, 399 A.2d 292, 296 (1979) [if witness is found to be unavailable after a hearing on the subject, execution may be proven by other satisfactory evidence]; *Walpole v. Lewis*, 254 Ark. 89, 492 S.W.2d 410, 413 (1973) [execution may be established without either witness as long as there is some other admissible evidence].

*But see Estate of Burdette*, 81 Cal.App.4th 938, 945, 97 Cal.Rptr.2d 263 (Cal.Ct.App.2000) [if one witness is unavailable, the proper testimony of the other witness is sufficient to prove execution]; *Gardner v. Balboni*, 218 Conn. 220, 588 A.2d 634, 640 (1991) [attestation clause enough to prove execution when witness unavailable]; *In re Estate of Collins*, 60 N.Y.2d 466, 470 N.Y.S.2d 338, 458 N.E.2d 797, 799 (1983) [even if witnesses can't remember, if attestation clause appears proper, presumption of proper execution]; *Culver v. King*, 362 So.2d 221, 223 (Ala.1978) [statutes do not require the testimony of all subscribing witnesses to establish execution].

## CONCLUSION

¶ 20 The formalities to be observed in the execution of wills are simple and calculated to prevent fraud and uncertainty in the testamentary dispositions of property. Where the Legislature has seen fit to impose certain requirements for the execution of a will, compliance with such requirements is necessary to the validity of any instrument offered as a will.[27] Here, because of the absence of a notary seal, the will presented for probate was not self-proving. The evidence reflects that there was only one subscribing witness. A determination that there were two subscribing witnesses based solely on one witness' testimony that he couldn't recall the other witness, that he had been told she was deceased, and that he wasn't sure she was present when he signed the will is clearly contrary to the weight of the evidence. The

27. *In re Stover's Will,* see note 22, supra at ¶ 6.

evidence does not establish that the testatrix substantially complied with the statutory requirements for execution and publication. The proponent of the will neglected to make a proper showing that the will was suitable for probate. Therefore, we reverse the trial court and remand with instructions that the will not be admitted to probate.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; DISTRICT COURT ORDER REVERSED AND REMANDED WITH INSTRUCTIONS.**

EDMONDSON, V.C.J., OPALA, KAUGER, WATT, and COLBERT, JJ., concur.

HARGRAVE, J., concurs in result.

WINCHESTER, C.J., TAYLOR, and REIF, J., (by separate writing) dissent.

# Last Will and Testament

OF

SHIRLEY JOYCE SPEERS

I, Shirley Joyce Speers, of Caney, Atoka County, Oklahoma, Social Security Number _____ being of full and sound and disposing memory, do hereby make, publish and declare this to be my Last Will and Testament, hereby revoking any and all former Wills and Codicils by me at any time made.

I.

I hereby direct that all my just debts, including the expenses of my last illness and funeral and the expenses of administration of my estate, be paid by my Executor as soon as possible after my death.

II.

I hereby give, devise and bequeath to Ralph Speers, all of the property of which I may die seized and possessed, whether the same be real, personal or mixed, and regardless of where the same may be situated. In the event that said Ralph Speers should fail to pay for the above listed expenses then I hereby give, devise and bequeath all of the property of which I may die seized and possessed, whether the same be real, personal or mixed, and regardless of where the same may be situated, less and except: All ~~household furnishings and appliances and~~ *AVAILABLE* livestock, to my ~~grandsons James Nelson Fincher and Jonathan Clyde Fincher~~ *DAUGHTERS*. Such ~~property shall be held in trust until said grandchildren shall each reach the legal age of majority. At the age of majority said property~~ shall be shared by them in equal portions, share and share alike   I further instruct that Doyle Wesley Fincher shall be appointed to serve as the trustee of said trust if and when it comes into creation

III.

~~I hereby give, devise and bequeath all my household furnishings and appliances to Sherry Arlene Ross, my daughter~~ *LIVESTOCK* *DANNY* *SON*

Page One of My Will

**A** ALL-STATE® INTERNATIONAL

### IV.

I hereby give, devise and bequeath all my livestock to Daniel Eugene Speers, my son.

### V.

I have specifically failed to provide for, Donna Leann Fincher my beloved daughter having full faith and confidence that my former husband, Ralph Speers will make suitable provisions for her needs.

### VI.

I hereby designate Ralph Speers as Executor of this, my Last Will and Testament; subject to the provisions set forth in Section I of this document. I also designate Doyle Wesley Fincher as alternate Executor of this, my Last Will and Testament, and direct that said Executor be permitted to act in said capacity without bond.

### VII.

I authorize my Executor to sell, lease, mortgage, rent or otherwise alienate any or all my property, real or personal on such terms and conditions as he may think to be to the best advantage of my estate, at public or private sale, with or without notice and subject only to confirmation by the District Court.

IN WITNESS WHEREOF, I, subscribe and declare this as my Last Will and Testament in the presence of the undersigned witnesses to each of whom at the time I declared this writing to be my Last Will and Testament and each of whom at the request of me and in the presence of each other have subscribed their names hereto as attesting witnesses at Atoka, Oklahoma, this *15th* day of July, 1982.

*Shirley J Speers*
Testatrix

### ATTESTATION

The foregoing instrument was subscribed and declared to be the Last Will and Testament of Shirley Joyce Speers, and we, the undersigned witnesses, at the request of and in the presence of Shirley Joyce Speers, and in the presence of each other do hereby sign our names as witnesses on this *15th* day of July, 1982.

| NAME | ADDRESS |
|---|---|
| *Walter Dawkins* | |
| *Sadie B. Walton* | |

Page Two of My Will

STATE OF OKLAHOMA )
               ) SS.
COUNTY OF ATOKA )

    Before me, the undersigned authority, on this day personally appeared Shirley Joyce Speers, _____, _____ and _____, known to me to be the Testatrix and witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and, all of said persons being be me first duly sworn, said Shirley Joyce Speers, Testatrix decalred to me and to the said witnesses in my presence that said instrument was her Last Will and Testament, and that she had willingly made and executed it as her free and voluntary act and deed for the purposes therein expressed, and the said witnesses, each on his oath stated to me in the presence and hearing of the said Testatrix that the said Testatrix has declared to them that said instrument was her Last Will and Testament and that she executed the same as such and wanted each of them to sign it as a witness; and upon the same as witnesses in the presence of the said Testatrix and at her request and that said Testatrix was at the time eighteen years of age or over and were of sound and disposing mind.

_____
Testatrix

_____
Witness

_____
Witness

_____
Witness

    Subscribed and acknowledged before me by the said Shirley Joyce Speers, Testatrix and subscribed and sworn to before me by the said _____, _____, and _____, witnesses, this **15th** day of July, 1982.

_____
Notary Public

My Commission Expires:

**5-11-86**

Page Three and Last Page of My Will

---

REIF, J., dissenting, with whom WINCHESTER, C.J., and TAYLOR, J., join.

¶ 1 I believe the majority opinion reflects an overly strict view of the requirements for admission of a will to probate, and an unduly critical view of the evidence presented in this case. In particular, I disagree with the majority conclusion that the absence of subscribing witness Sadie B. Walton at trial was not "satisfactorily shown." I believe the ma-

jority conclusion in this regard is based on an incorrect interpretation of the term "satisfactorily shown" and the out of hand rejection of hearsay evidence on this point that was received *without objection.*

¶ 2 In determining whether the absence of a subscribing witness was "satisfactorily shown," I do not believe the legislature was requiring "an amount of proof which will ordinarily satisfy an unprejudiced mind beyond a reasonable doubt," as the majority suggests. I believe the legislature used "satisfactorily shown" in the more liberal sense of a showing "adequate and sufficient to convince a reasonable person." See *Central Mutual Insurance Co. of Chicago v. St. Paul Mercury Indemnity Co. of St. Paul.* 291 Ill.App. 50, 9 N.E.2d 355, 356 (1937). One court has said that a requirement that a fact must be made to appear "to the satisfaction of the court" goes to "the quieting of the mind of the judge [and] the freedom to act according to one's judgment." *State v. Chapman,* 1 S.D. 414, 47 N.W. 411, 412 (1890).

¶ 3 In the case at hand, the unobjected hearsay statement of subscribing witness Walter Durbin (that he was told Sadie Walton had died), was adequate and sufficient to convince a reasonable person that there was good reason for her "absence" as a witness at trial. It was also sufficient to quiet the mind of the trial judge on this issue and give him freedom to act according to his judgment in allowing only one subscribing witness to prove the will. Accordingly, I strongly disagree with the majority holding that "the trial court could not, as a matter of law, have made the requisite statutory finding that Walton's absence or death was 'satisfactorily shown.'"

¶ 4 I likewise disagree with the majority's view of Mr. Durbin's testimony concerning the execution of the will. It is simply unrealistic to expect Mr. Durbin to remember every detail concerning the execution of a will that took place over 20 years prior to his testimony.

¶ 5 It is important to keep in mind that Mr. Durbin's testimony was given with reference to the copy of the will that was offered for probate. He testified that he *did remember* signing the original and seeing Mrs. Speers sign the original. He also remembered Mrs. Speers wanted him to witness the will and telling her he would. While he cannot remember Sadie Walton, or whether she and the notary were present and also signed, the copy of the will reflects the signature of "Sadie B. Walton" in association with the status of "witness," and the signature "Vicky Thomas" on the line titled "Notary Public."

¶ 6 On cross-examination by contestants' counsel, Mr. Durbin testified without objection that he presumed Sadie Walton and notary Vicky Thomas were present by virtue of their signatures on the will. This common sense connection made by Mr. Durbin reflects an inference that could certainly be drawn by the trial court as well. In the final analysis, there is simply nothing in the record to suggest that will was not duly executed as it appears to have been.[1]

¶ 7 The copy of the will itself, along with the details Mr. Durbin could remember, supports the trial court's conclusion that the will was duly executed. It is well settled "[s]ubstantial, not strict, compliance is required for proper attestation, publication and acknowledgment of a will under § 55 ... Substantial compliance is satisfied if the testator, *by words or conduct,* informs the witnesses the instrument is his will and wishes them to sign it." *In re Estate of Mowdy,* 1999 OK CIV APP 4, ¶ 17, 973 P.2d 345, 350.

¶ 8 For the foregoing reasons, I respectfully dissent from the majority opinion. I

---

1. The copy of the will offered for probate does contain certain handwritten changes in some contingent bequests. To be sure, the presence of handwritten changes on a will or copy of a will can cast doubt on the due execution of the will. However, in the case at hand, the handwritten changes have no bearing on the issue of due execution in light of Mr. Durbin's testimony that the original will "was a three-page typewritten document when she brought it to me ... [w]ith no markings on it." Even assuming that Mrs. Speers later tried to indicate a different testamentary intent with respect to the *contingent* bequests, the handwritten changes did not purport to revoke or otherwise affect her *general testamentary intent* that Ralph Speers receive *all* of her estate. More importantly, the handwritten changes were not sufficient to revoke the will, as the Court of Civil Appeals noted in its opinion.

would withdraw certiorari as improvidently granted and deny certiorari.